UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NORGREN AUTOMATION
SOLUTIONS, LLC,

    Plaintiff,

v.

PHD, INC.,

    Defendant.
_____/

Case No. 14-cv-13400

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
MONA K. MAJZOUB

**OPINION AND ORDER OVERRULING PLAINTIFF'S OBJECTION [44], AND ADOPTING REPORT AND RECOMMENDATION OF SPECIAL MASTER ON PATENT CLAIM CONSTRUCTION [43]**

**I. INTRODUCTION**

On September 3, 2014, Norgren Automation Solutions, LLC ("Norgren" or "Plaintiff") commenced this patent infringement suit against PHD, Inc. ("PHD" or "Defendant"). The Court referred this matter to Special Master Richard D. Grauer for a Report and Recommendation regarding the appropriate construction of the patent claim terms at issue. *See* Dkt. No. 37. On June 22, 2015, the Special Master submitted his Report and Recommendation [43] with a recommended claim construction. On July 2, 2015, Norgren filed Objections to the Report and Recommendations of the Special Master [44]. This matter is now fully briefed. After conducting a *de novo* review of the Report and Recommendation, the Court finds that oral argument will not aid in the resolution of this matter. Thus, the Court cancels the September 29, 2015 hearing. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons discussed herein, the Court will **OVERRULE** Norgren's Objections [44], and **ACCEPT** and **ADOPT** the Special Master's Report and Recommendation [43]. *See* 28 U.S.C. § 636(b)(1). The Court's reasoning is set forth below.

## II. BACKGROUND

### A. The Patents-in-Suit

Norgren accuses PHD of infringing two patents: (1) United States Reissued Patent No. RE39,786 ("the '786 Patent") and (2) United States Reissued Patent No. RE41,223 ("the '223 Patent"). *See* Dkt. No. 1. Both the '786 Patent and the '223 Patent (collectively "the patents-in-suit") have their origin in a single patent application filed on January 7, 1998, which matured into United States Patent No. 6,079,896 ("the '896 Patent") granted on June 27, 2000. *See* Dkt. No. 43 at 6; Dkt. No. 40 at 5. Pursuant to 35 U.S.C. § 251, the '786 Patent and the '223 Patent were each later "reissued" from the '896 Patent at Norgren's request on August 21, 2007 and April 13, 2010, respectively. *See* Dkt. Nos. 40-2, 40-3.

Both patents-in-suit are entitled "Clamp With Improved Internal Cam Action." Dkt. Nos. 40-2, 40-3. As reissued, the patents-in-suit contain different claims. However, both patents relate to a "clamping apparatus" that moves objects from one location to another in manufacturing environments. *See id.* ("A clamping apparatus, for use with an actuator, has a housing with a guide track mounted on or formed in the housing."). Specifically, Norgren alleges that PHD is infringing claims 7, 15, 18, 21-23, 27-35, and 39-42 of the '786 Patent, and claims 10-12, 17, 21, 22, 25-28, and 31 of the '223 Patent. *See* Dkt. No. 1.

### B. The Claims

Pursuant to the Special Master's recommendation, Norgren reduced the number of asserted patent claims to the following ten representative claims: claims 15, 21, 27, 28, and 32 of the '786 Patent, and claims 11, 21, 22, 25, 26 of the '223 Patent. *See* Dkt. No. 40 at 6, n.2. Additionally, the Special Master instructed each party not to submit more than five claim terms

for construction by the Court. In response, the parties submitted a list of "Joint Claim Construction Terms" that were disputed, including the following terms for construction:

    (1) ". . . having a <u>guide track</u> . . .[;]"

    (2) ". . . defined on <u>opposing inner surfaces;</u> . . .[;]"

    (3) "<u>. . . a cam / a single cam</u> . . .[;]"

    (4) ". . . an <u>actuator</u> / a <u>fluid linear reciprocal actuator</u> / a <u>linear reciprocal, power operated, actuator</u> . . .[;]"[1]

    (5) "said clamping apparatus comprising: <u>a support structure;</u>" and

    (6) "<u>. . . means for encasing</u> . . ."

Dkt. No. 38 at 3-8 (emphasis in original).

### C. Special Master's Report and Recommendation

The Special Master reviewed the briefs and exhibits of the parties and concluded that oral argument was not needed pursuant to Rule 7.1(f)(2) of this Court's Local Rules. *See* Dkt. No. 43 at 2. Thereafter, the Special Master put forth a comprehensive recommendation covering (1) the permissible number of patent claims that Norgren may assert, (2) the permissible number of claim terms that each party may submit for construction by the Court, and (3) the proper construction for the disputed claim terms. *See generally* Dkt. No. 43.

Norgren objects to the following finding by the Special Master regarding the construction of the single claim term "actuator" as applied to all of the asserted claims:

---

[1] There was initially much debate about these three terms being construed as one claim term. Norgren contended "that the noted claim terms are separate and distinct from one another, thereby establishing three (3) different claim terms for construction which would make for a total of seven (7) claim terms" and requested "Defendant's claim terms be reduced to five (5)." Dkt. No. 38 at 2. The Special Master directly addressed this point in his Report and Recommendation noting that "for purposes of [his] claim construction analysis, the three claim forms of this group distill down to 'actuator,' 'fluid actuator,' and 'power operated actuator.'" Dkt. No. 43 at 17. The Special Master noted that Norgren's argument that good cause should be shown for all seven terms was "without merit" after re-explaining his instructions for a good cause showing. *See id.* at 16 n.3. While Norgren ultimately disputes the construction of the single claim term actuator as applied to all of the asserted claims, it appears Norgren does not dispute the Special Master's decision to begin with the one-word claim limitation "actuator" before moving on to the other two disputed "actuator" claim terms. *See* Dkt. No. 44 at 4 ("Norgren's objection is limited to the construction of the single claim term *"actuator"* as applied to all of the asserted claims."). Accordingly, the Court will deem this matter settled and address the Special Master's decision to determine whether the other two disputed "actuator" claim terms presented non-duplicative and dispositive issues.

3. The claim term "*actuator*" as it appears in every asserted claim is construed to mean "fluid-powered actuator." Specifically,

   (a) In independent claims 15 of the '786 Patent and 11 of the '223 Patent, "*actuator*" means "fluid-powered actuator."

   (b) In independent claims 21 and 32 of the '786 Patent, "*fluid linear reciprocal actuator*" means " linear reciprocal, fluid-powered, actuator."

   (c) In independent claims 21 and 26 of the '223 Patent, "*linear reciprocal, power operated, actuator*" means "linear reciprocal, fluid-powered, actuator."

Dkt. No. 43 at 3 (emphases in original) (internal citations omitted). The parties do not dispute the Special Master limiting Norgren to ten patent claims it may assert, *see* Dkt. No. 34 at 3-6; limiting the parties to five claim terms for construction by the Court, *see id.*; (3) recommending that "means for encasing" means "a cover or side plate," *id.* at 37-39; and (4) recommending that the remaining disputed claims do not require construction by the Court, *see id.* at 40-52.

### III. LEGAL STANDARD

Pursuant to Rule 53 of the Federal Rules of Civil Procedure, this Court is required to conduct a *de novo* review of those portions of the Special Master's Report to which objections have been filed. *See* FED. R. CIV .P. 53(f)(3); *see also Hochstein v. Microsoft Corp.,* 730 F.Supp.2d 714, 717 (E.D. Mich. 2010), *aff'd* 430 F. App'x 898 (Fed. Cir. 2011) (citing FED. R. CIV. P. 53(f) to note that "[t]he Court reviews *de novo* factual findings and legal conclusions of the Special Master to which a specific objection has been made."). There is an exception to a *de novo* review where the parties have agreed that the Special Master's findings shall be final or that review shall be for clear error. *See* FED. R. CIV .P. 53(f)(3). If no such agreement is had, the Court conducts a *de novo* review of those portions to which objections have been filed so that the Court may "'accept, reject, or modify, in whole or in part the finding or recommendations'" of the Special Master. *Chrimar Systems, Inc. v. Foundry Networks, LLC,* No. 06–13936, 2010 WL 3431569, at * 2 (E.D. Mich. Aug. 30, 2010) (quoting 28 U.S.C. § 636(b)(1)).

## IV. DISCUSSION

Here, the parties did not stipulate to the finality of the Special Master's Report and did not agree to clear error review. *Cf.* FED. R. CIV .P. 53(f) (3). Accordingly, Norgren is within its right to object to the Special Master's recommendation "that the claim term *'actuator'* be given the construction 'fluid-powered actuator[.]'" Dkt. No. 44 at 4. Norgren does not disagree with the Special Master's finding that the specifications of the '786 and '223 Patents alone do not support restricting the term "actuator" to a specific-type of actuator. *See id.* at 4-5 (referencing Dkt. No. 43 at 23-24). Instead, Norgren focuses on the Special Master's conclusion regarding the prosecution history of the '786 Patent arguing that "the Special Master's construction of 'fluid-powered actuator' simply goes too far without sufficient support for doing so." *Id.* at 5. Since Norgren specifically focuses on the Special Master's use of the prosecution history to reach his conclusion, the Court will focus its *de novo* review on that portion of the Special Master's analysis in reaching his conclusion. *See* FED. R. CIV .P. 53(f)(3).

A determination of infringement requires a two-step analysis. *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1476 (Fed. Cir. 1998). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id* . Claim construction is an issue of law. *Markman v. West View Instruments, Inc.,* 517 U.S. 370, 388-90, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In interpreting claims, a court "should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Absent an express intent to impart a novel meaning, "terms in a claim are to be given their ordinary and accustomed meaning." *Renishaw PLC v. Marposs Societa' per Azioni,* 158

F.3d 1243, 1249 (Fed. Cir. 1998). This is because it is the claims that measure the invention. *SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107, 1121 (Fed.Cir.1985). Accordingly, claim construction always begins with the language of the claim and asks "how a person of ordinary skill in the art understands a claim term." *Phillips v. AKW Corp.,* 415 F.3d 1303, 1317 -18 (Fed. Cir. 2005). A "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1313. It is "improper to read [a claim] term to encompass a broader definition" than the ordinary and customary meaning revealed by the context of the intrinsic record. *Nystrom v. TREX Co.,* 424 F.3d 1136, 1145 (Fed. Cir. 2005). Indeed, "[c]laims cannot be of broader scope than the invention set forth in the specification." *Id.*

The prosecution history "inform[s] the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips,* 415 F.3d at 1317. The "purpose of consulting the prosecution history in construing a claim is to exclude any interpretation that was disclaimed during prosecution[:] . . .

> [W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender. Such a use of the prosecutions history *ensures that claims are not construed one way in order to obtain their allowance and in a different way against accused infringers.*

*Chimie v. PPG Indus.,* 402 F.3d 1371, 1384 (Fed. Cir. 2005) (emphasis added). Thus, pursuant to the Federal Circuit, a statement made by the patentee during prosecution history of a patent in the same family as the patent-in-suit can operate as a disclaimer. *Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F.3d 1340, 1350 (Fed. Cir. 2004) (finding that statement made during prosecution of related patent operated as a disclaimer with respect to a later-issued patent).

The crux of Norgren's objection is that "the prosecution history is ambiguous at best and fails to show that Norgren clearly and unmistakably disavowed the ordinary and customary meaning of the claim term *'actuator'*" Dkt. No. 44 at 7. After reviewing the prosecution history, the Court disagrees.

In this case, a patent examiner rejected the patentee's assertion that "actuator" in asserted Claim 15 of the '786 Patent had its origin in Claim 11, amongst others, of the application pursuant to "35 U.S.C. 102(b) as being anticipated by Kraft U.S. patent 886,003." *See* Dkt. No. 42-4 at ¶5. In response to the Office Action, the patentee sent an Amendment to the examiner in an attempt to overcome the examiner's rejection. *See generally* Dkt. No. 42-5. In the response, the patentee stressed that the rejected claims were allowable because the actuators of the subject patent application concerned power-operated clamps with fluid-operated actuators:

> The device *in the subject application* relates to a *power clamp or gripper* that is actuated by a conventional *fluid operated cylinder actuator*.
>
> *The power linear actuators* and the structural integrity of the clamps make for a rather heavy and expensive device that is not easily disassembled. *Such powered clamps* provide gripping forces that extend well beyond 'ordinary requirements.'
>
> The subject application has been currently classified in Classes 403/322.3; 269/32; 403/31. These classifications relate to pneumatic *or hydraulic means*, or both, for holding and releasing and/or applying forces between a pair of jaws. *Clearly, the actuation of a fluid actuator for engaging the jaws is nowhere related to the device described in the Kraft reference.*
>
> *The subject application utilizes fluid-operated actuators* that provide quick actuation with high clamping and actuation forces. Therefore, Applicant has amended claims 21-42 to include fluid-operated actuators.
>
> Therefore, *in light of the fact that the subject application relates to power fluid actuators* for actuating jaws in an industrialized environment . . . it is readily apparent that one skilled *in the power fluid actuation* art would not look to the art surrounding the device described in Kraft to resolve their problems, thereby making Kraft non-analogous art.

*Id.* at 21-22 (emphasis added). As the Special Master noted, these clear and unmistakable "'power' and 'power-fluid'-based arguments were urged as a reason why <u>all</u> of the rejected claims were patentable, not just those claims that specifically called for that particular type of actuator." Dkt. No. 43 at 25; *cf.* Dkt. No. 42-5 at 22 ("[*I*]n *light of the fact that the subject application relates to power fluid actuators. . . .*").

Despite the clear and unmistakable arguments put forth regarding a power-fluid based actuator when prosecuting the '786 Patent, Norgren argues that there is "conflicting evidence in the present record as to whether the term *'actuator'* was intended to be limited to a 'fluid-powered actuator' or that fluid-power actuators were merely a type of actuator that could be used." Dkt. No. 44 at 8 (referencing *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1136 (Fed. Cir. 2011), and that case's contention that the Federal Circuit has "found that use of the phrase 'present invention' or 'this invention' is not always so limiting, such as where the references to a certain limitation as being the 'invention' are not uniform, or where other portions of the intrinsic evidence do not support applying the limitation to the entire patent.").

To this point, Norgren emphasizes that during the prosecution of the '223 Patent, the patentee continued to argue for claims that did not include the "fluid-powered actuator" limitation. *See* Dkt. No. 47 at 7 (referencing Dkt. No. 42-6 at 11). However, when prosecuting the '223 Patent, the patentee again noted that the application related to a fluid-operated actuator:

> The device in the present application relates to *a power clamp or gripper*, that *can* be actuated *by a conventional fluid-operated cylinder actuator.*
>
> A *power operated linear actuator* provides these devices with quick and powerful forces for actuating and locking the pivot arms of the gripper.
> The *power operated linear actuators* and the structural integrity of the clamps make for a rather heavy and expensive device that is not easily disassembled. Such *power operated* clamps provide gripping forces that extend well beyond 'ordinary requirements.'

> The present application has been currently classified in Classes 403/322.3; 269/32; 403/31. These classifications relate to pneumatic or hydraulic means, or both, for holding and releasing and/or applying forces between a pair of jaws. *Clearly, the actuation of a power operated actuator for engaging the jaws is nowhere related to the device described in the Kraft reference.*
>
> The present application uses power operated actuators that provide quick actuation with high clamping and actuation forces. Therefore, Applicant has added claims 21-31 to *include power operated actuators*.

Dkt. No. 42-6 at 11-12. As the Special Master pointed out, the prosecution of the '223 Patent, by itself, does not provide sufficient basis for further restriction of "powered actuator" to "fluid-powered actuator." *See* Dkt. No. 43 at 32. However, *as a whole*, this Court finds that the intrinsic evidence in the prosecution history of the patents-in-suit supports construing the term "actuator" to mean "fluid-powered actuator."

Here, the patentee's statement that "[t]he device in the subject application relates to a power clamp or gripper that is actuated by a conventional fluid operated cylinder actuator[,]" Dkt. No. 42-5 at 21, could not be clearer. *Cf.* Dkt. No. 42-6 at 11 ("The device in the present application relates to a power clamp or gripper, that can be actuated by a conventional fluid-operated cylinder actuator."). These statements were "made in an official proceeding in which the patentee had every incentive to exercise care in characterizing the scope of its invention." *Microsoft Corp.,* 357 F.3d at 1350. As the Federal Circuit has indicated "[t]he public is entitled to take the patentee at his word[.]" *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006); *see also Gillette Co. v. Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) (holding party to their "blatant admission" to support a claim construction).

Moreover, the Court would be remiss not to note that these patents share a familial relationship, as they both emanated from the '896 Patent and each relate to the same "clamping apparatus" that moves objects from one location to another in manufacturing environments.

Notably, the patent specifications for *both* patents-in-suit unambiguously state that the actuator is a fluid cylinder. *See* Dkt. No. 40-2 at 10 (stating in the Summary of Invention for the '786 Patent that "[t]he present invention relates to a clamping apparatus *having a conventional fluid operated cylinder actuator*.") (emphasis added); Dkt. No 40-3 at 10 (stating the *exact* same in the Summary of Invention for the '223 Patent); *see also* 40-2 at 10 (stating in the Summary of Invention for the '786 Patent that "[t]he *fluid actuator* drives the roller or cam follower reciprocally between the first and second positions in order to move the clamp arm from the clamped position to the released position."); Dkt. No. 40-3 at 10 (stating the *exact* same in the Summary of Invention for the '223 Patent). Critically, no other type of actuator is described anywhere in the patents-in-suit nor in the prosecution history of the patents-in-suit.

      This is critical because it undermines Norgren's position that there is conflicting evidence in the present record as to whether the term "actuator" was intended to be limited to a "fluid-powered actuator" or whether fluid-powered actuators were merely a type of actuator that could be used. For example, when trying to emphasize that the fluid-powered actuator was merely a type of actuator that could be used, Norgren emphasizes that during the prosecution of the '223 Patent the patentee indicated that "[t]he device in the present application relates to a power clamp or gripper, that *can* be actuated by a conventional fluid-operated cylinder actuator." Dkt. No. 42-6 at 11. Norgren emphasizes that the patentee indicated "the clamp *'can'* be actuated by a conventional fluid-operated actuator as opposed to *must* be actuated by a conventional fluid-powered actuator." Dkt. No. 47 at 7 (emphasis in original) (internal citations omitted). However, this argument does not hold water because the patentee only instructed the public that the subject invention involved a fluid operated cylinder actuator. *See Laitram Corp. v. Morehouse Indust., Inc.,* 143 F.3d 1456, 1462 (Fed. Cir. 1998) (explaining the general idea that disavowal takes

place once the applicant places the argument in the public record, as it reflects what the applicant believes its claims mean: "Regardless of the examiner's motives, arguments made during prosecution shed light on what the applicant meant by its various terms.").

In both the patents-in-suit, the patentee indicated that the subject application was classified "in Classes 403/322.3; 269/32; 403/31" and that those classifications "relate to pneumatic or hydraulic means, or both, for holding and releasing and/or applying forces between a pair of jaws[.]" Dkt. No 42-5 at 22; Dkt. No. 42-6 at 12. In prosecuting the '786 Patent, the patentee then argued *in no uncertain* terms that the application *only* related to a hydraulic means as the patentee indicated that "[c]learly, the actuation of a fluid actuator for engaging the jaws is nowhere related to the device described in the Kraft reference" and the patentee clarified that "the subject application utilizes fluid-operated actuators." Dkt. No 42-5 at 22.

That the patentee later spoke in broad terms is of no consequence, especially considering the fact that this Court finds the later prosecution history does not conflict with the characterization of a fluid operated cylinder actuator. *See Southwall Technologies, Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579 (Fed. Cir. 1995) (citing *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 632, 3 USPQ2d 1109, 1113 (Fed. Cir. 1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 751, 98 L.Ed.2d 764 (1988), to state: "[C]laim terms must be interpreted consistently."); *see also Autogiro Co. of Am. v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967) ("Claim differentiation is a guide, not a rigid rule. If a claim will bear only one interpretation, similarity will have to be tolerated.").[2]

---

[2] Indeed, a "fluid-powered actuator" is a type of "powered actuator." The Court simply disagrees with Norgren's contention that "[a] competitor would [] quickly realize that Norgren intended to provide coverage for various types of actuators, *including* fluid-powered actuators." Dkt. No. 44 at 9. Competitors could have come to the conclusion that Norgren intended to provide coverage for various types of actuators if the patentee did not expressly disavow other types of actuators by limiting the scope of the actuator at issue to a fluid-powered actuator. The way the patentee presented his arguments to overcome the examiner's rejection simply eliminated any reasonable ambiguity that one can reach. After stating explicitly in the prosecution of the '786 Patent that "[t]he device in the subject

The patentee's "explicit[] characteriz[ation of] an aspect of his invention in a specific manner to overcome prior art" leads this Court to find that the patentee limited "the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharm. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006) (citations omitted). The Federal Circuit has made it clear that it is entirely appropriate to limit claims when required by the prosecution history. *Cultor Corp. v. A.E. Staley Mfg.* Co., 224 F.3d 1328, 1330 (Fed. Cir. 2000) ("Whether a claim must, in any particular case, be limited to the specific embodiment presented in the specification, depends in each case on the specificity of the description of the invention and on the prosecution history."); *Watts v. XL Sys.,* 232 F.3d 877, 881-83 (Fed. Cir. 2000) (ruling that prosecution history supported limiting construction to preferred embodiments); *Alloc, Inc. v. ITC,* 342 F.3d 1361, 1368-1371 (Fed. Cir. 2003) (ruling prosecution history supported limiting construction to preferred embodiments).[3]

---

application . . . is actuated by a . . . fluid operated cylinder actuator,"—which, for all intents and purposes is a "powered actuator"—the patentee asserted in the prosecution of the '223 Patent that "[t]he device in the present application . . . can be actuated by a conventional fluid-operated cylinder actuator." This merely reaffirmed that the device is a powered actuator that was powered by a fluid-operated cylinder actuator. The patentee did not state "the device in the present application can be actuated by fluid-operated cylinder actuators *and* air-operated cylinder actuators or other variants of pneumatic actuators. Instead, the patentee was specific; just as he was specific previously when he stated that the actuator is powered, and it is powered by a fluid-operated cylinder actuator. As mentioned above, it is "improper to read [a claim] term to encompass a broader definition" than the ordinary and customary meaning revealed by the context of the intrinsic record. *See Nystrom,* 424 F.3d at 1145.

[3] Indeed, the very authority relied upon by Norgren supports the notion that Norgren should be estopped from using a broader claim than "fluid-powered actuator." *See Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1054 (Fed. Cir. 1989) (citing *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.,* 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), to note that "[t]here are, of course, situations in which what an attorney says or does during prosecution may be held against a patentee on the theory of estoppel. For example, when a patentee attempts to *expand* the literal meaning of a claim under the patent law doctrine of equivalents and the prosecution history shows that the expanded scope would be inclusive of subject matter the attorney had represented to the examiner was *not* intended to be included in order to get the claim allowed, the patentee may be estopped to contend otherwise."). Though Norgren may disagree, that is exactly what was done here; the patentee limited the scope of the term to fluid-powered actuators to get the claim allowed. *See* Dkt. No. 42-5 at 21 (explaining in multiple iterations that "the distinctions between the subject matter surrounding the Kraft reference and that of the subject application are rather striking[,] after stating "[t]he device in the subject application relates to a power clamp or gripper that is actuated by a conventional fluid-operated cylinder actuator."). Accordingly, Norgren will be estopped from contending otherwise.

The Court reiterates that "any statement of the patentee in the prosecution of a related application as to the scope of the invention [is] relevant to claim construction[.]"*Microsoft Corp.,* 357 F.3d at 1350. Here "the relevance of the statement made in this instance is enhanced by the fact that it was made in an official proceeding in which the patentee had every incentive to exercise care in characterizing the scope of its invention." *Id.* "[T]he prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application." *Id.* at 1349 (citing, *inter alia*, *Jonsson v. Stanley Works,* 903 F.2d 812, 818 (Fed. Cir. 1990)); *see also Laitram Corp.,* 143 F.3d at 1460 n. 2 (applying the prosecution histories of two sibling patents, which shared a common written description, to one another).

Taking these standards into consideration, the Court finds that the claim construction established for "actuator" as it appears in claim 15 of the '786 Patent and claim 11 of the '223 Patent must hold for "actuator" in every other claim of both patents because the patentee explicitly disavowed a broad construction of the term "actuator" in favor of a "fluid-powered actuator" and "claim terms must be interpreted consistently." *Southwall Technologies, Inc.*, 54 F.3d at 1579; *cf. Snow v. Lake Shore & Mich. S. Ry. Co.,* 121 U.S. 617, 629–30, 7 S.Ct. 1343, 30 L.Ed. 1004 (1887) ("It is not admissible to adopt the argument made on behalf of the appellants, that this language is to be taken as a mere recommendation by the patentee of the manner in which he prefers to arrange these parts of his machine. There is nothing in the context to indicate that the patentee contemplated any alternative for the arrangement of the piston and piston-rod."). Accordingly, the Court will overrule Norgren's objection that the claim term "actuator" as it appears in every asserted claim should not be construed to mean "fluid-powered actuator."

## V. CONCLUSION

Having conducted a *de novo* determination of those portions of the Reports and Recommendations to which objection is made, the Court **HEREBY OVERRULES** Norgren's Objections [44], and **ACCEPTS** and **ADOPTS** the claim constructions and other recommendations recommended by the Special Master in his Report and Recommendation [43].

**IT IS HEREBY ORDERED** that

1. Norgren must limit the total number of claims asserted in this lawsuit to ten. Norgren may, in the future, upon a showing of good cause (*e.g.*, cancellation of a selected claim in a USPTO proceeding, or newly discovered evidence) replace any of the selected ten claims with a comparable number of substitute claims, or add additional claims upon a showing that such claims present unique infringement or validity issues.

2. Each party may submit no more than five claim terms for construction by the Court. If any party believes that there are claim terms in addition to the five herein allowed for submission to the Court, it can include a maximum of three additional terms with its submissions, along with a showing of why and how the proposed construction of each additional term is potentially dispositive of claim validity or infringement and presents issues non-duplicative of those raised by the other five claim terms.

3. The claim term "*actuator*" as it appears in every asserted claim is construed to mean "fluid-powered actuator." Specifically,

    (a) In independent claims 15 of the '786 Patent and 11 of the '223 Patent, "*actuator*" means "fluid-powered actuator."

    (b) In independent claims 21 and 32 of the '786 Patent, "*fluid linear reciprocal actuator*" means "linear reciprocal, fluid-powered, actuator."

    (c) In independent claims 21 and 26 of the '223 Patent, "*linear reciprocal, power operated, actuator*" means "linear reciprocal, fluid-powered, actuator."

4. The claim term "*means for encasing*" in claim 15 of the '786 Patent means "a cover or side plate."

5. The claim term "*guide track*" in independent claim 15 of the '786 Patent and independent claims 11 and 26 of the '223 Patent does not require construction by the Court.

6. The claim term "*opposing [or opposed] inner surfaces*" in independent claim 15 of the '786 Patent and independent claims 11 and 26 of the '223 Patent does not require construction by the Court.

7. The claim term "*cam*" in independent claim 15 of the '786 Patent and independent claims 11, 21 and 26 of the '223 Patent, and the claim term "*single cam*" in claims 21and 32 of the '786 Patent do not require construction by the Court.

8. The claim term "*support structure*" in independent claim 21 of the '223 Patent does not require construction by the Court.

IT IS SO ORDERED.

Dated: September 28, 2015　　　　　　　　　　　　　/s/Gershwin A Drain  
Detroit, MI　　　　　　　　　　　　　　　　　　　HON. GERSHWIN A. DRAIN  
　　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge